**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

ROBERT DOUGAL,

                    Plaintiff,

      v.

ERIC LEWICKI, et al.,

                  Defendants.

No. 1:23-CV-1167
(DNH/CFH)

─────────────────────────────────

**APPEARANCES:**

Robert Dougal
294 Wilbur Road
Schuylerville, New York 12871
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Background

    Plaintiff pro se Robert Dougal ("plaintiff") commenced this action on September 12, 2023, by filing a complaint.  See Dkt. No. 1 ("Compl.").  Plaintiff also filed an application to proceed in forma pauperis ("IFP").  See Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

───────────────

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

## II. Initial Review

### A. Legal Standard

Section 1915[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted).  This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Pro se litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law[.]"  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

---

[2] The language of § 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria.  See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too [] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citation omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

**B. Plaintiff's Complaint**

Plaintiff names eight current or former police officers, four county attorneys, three current or former town justices, and one defense attorney as defendants.  See Compl. at 2-5.  Plaintiff alleges that on January 25, 2017, while at a doctor's appointment, plaintiff's partner, Susan Yerry, saw someone cutting down a tree on her property.  See Compl. at 6, ¶ 4.  Ms. Yerry called the New York State Police and defendant, State Trooper Eric Lewicki, responded.  See id.  Trooper Lewicki spoke with the loggers who stated that they would not cut down any other trees.  See id.  After plaintiff returned

home, he and Ms. Yerry looked at the tree and they saw two Saratoga County Sherriff's vehicles driving by.  <u>See id.</u>  The damage to the trees was worse than they thought, and they flagged the vehicles down.  <u>See id.</u>  Plaintiff asked defendants, Saratoga County Sheriff's Deputy C.J. Brownell and Saratoga County Sheriff's Deputy John Carey, to investigate the timber theft.  <u>See id.</u>  Deputies Brownell and Carey questioned plaintiff about "gunshots, because one of the three loggers involved in the timber theft claimed to have heard gunshots."  <u>Id.</u>  Deputy Carey handcuffed plaintiff and Deputy Brownell threw plaintiff to the ground and knelt on his back.  <u>See id.</u>

Defendants Lewicki, Trooper Christopher Martin, and retired Sergeant Brent Dupras arrived at the scene.  <u>See</u> Compl. at 6, ¶ 4.  Trooper Martin held Ms. Yerry's arm and "would not allow Ms. Yerry to enter her house unless she let him in to retrieve her firearm."  <u>Id.</u> at 7, ¶ 6.  Trooper Martin and Deputy Carey confiscated two firearms and plaintiff's medications.  <u>See id.</u>  Plaintiff was transported to the State Police Barracks in Malta, New York.  <u>See id.</u> at 7, ¶ 7.  Plaintiff alleges that he "was denied his evening dose of medications while in custody . . . ."  <u>Id.</u> at 7, ¶ 8.  He was charged with criminal possession of a weapon in the fourth degree and illegal discharge of a firearm.  <u>See id.</u> at 7, ¶ 9.  Plaintiff alleges that on February 8, 2018, defendant, former Saratoga County Town Justice Daniel Waldron, denied his motion to dismiss the charges.  <u>See id.</u> at 7, ¶ 10.

On August 12, 2018, plaintiff saw Deputy Brownell standing on the road in front of his house with an assault rifle pointed at plaintiff.  <u>See</u> Compl. at 8, ¶ 13.  Ms. Yerry asked why he was there, and Deputy Brownell responded, "wrong address."  <u>Id.</u>  Then, approximately seven law enforcement officers, including Deputies Brownell and Carey

drove to Ms. Yerry's property and refused to explain why they were there.  See id. at 8, ¶ 14.  Ms. Yerry called and filed a complaint with the Saratoga County Sherriff's Office.  See id. at 8, ¶ 15.  Plaintiff contends that defendant, Saratoga County Sheriff Michael Zurlo, never responded to her complaint.  See id.  Six weeks later, Ms. Yerry received a summons in the mail for trespassing charges.  See id. at 8, ¶ 17.  Plaintiff contends that Ms. Yerry tried to contact Sherriff Zurlo multiple times, but he did not respond.  See id. at 8-9, ¶¶ 16, 18, 19.  Justice Walden found Ms. Yerry guilty of the trespassing charges on April 2, 2019.  See id. at 9, ¶ 20.

Plaintiff contends that in response to a Freedom of Information Act ("FOIA") request submitted by Ms. Yerry, he learned that his neighbor called 911 on August 12, 2018, threatening to shoot plaintiff if plaintiff came onto his property.  See Compl. at 9, ¶ 21.  Plaintiff states that defendant Assistant District Attorney Rachel Welch Phelan was aware of the 911 call and instead of prosecuting his neighbor for the threat, chose to prosecute Ms. Yerry for trespassing.  See id. at 9, ¶ 22.

Plaintiff went to trial on October 28, 2019, during which Deputy Brownell testified that he put plaintiff on the ground to handcuff him.  See Compl. at 9, ¶ 23.  Plaintiff contends that this testimony was contrary to Deputy Brownell's Huntley hearing testimony.  See id.  Plaintiff's defense counsel at trial was defendant Attorney Lee Kindlon.  See id. at 10, ¶ 25.  Plaintiff was acquitted of illegal discharge of a weapon and convicted of criminal possession of a weapon.  See id. at 10, ¶ 26.  Plaintiff was sentenced to six months' imprisonment on January 7, 2020.  See id. at 10, ¶ 28.

Plaintiff contends that on January 29, 2020, the Saratoga County Correctional Facility withheld his medications for twenty-four hours.  See Compl. at 10, ¶ 29.  He

states that on March 3, 2020, Justice Waldron increased his sentence to nine months because plaintiff was appealing his conviction.  See id. at 10, ¶ 30.

Two temporary orders of protection were issued against plaintiff for Aime Ferrone and Marilyn Erano who own the trailer park across the road from plaintiff's house.  See Compl. at 10-11, ¶ 31.  Mr. Ferrone videotaped plaintiff pacing and ranting on his phone on plaintiff's front porch.  See id. at 11, ¶ 31.  Defendant Deputy William Brady arrested plaintiff and charged him with criminal contempt in the second degree.  See id. at 11, ¶ 32.  Plaintiff contends that the criminal contempt charge "remains unresolved" as of the date of his complaint, September 12, 2023.  See id. at 11, ¶ 34.  Plaintiff alleges that there is no valid reason for the orders of protection.  See id.

Then, "[o]n January 31, 2021, Ms. Yerry learned that Defendant Rachael Welch Phelan, who prosecuted Ms. Yerry, was a second cousin on the complainant on her trespassing charges."  Compl. at 11, ¶ 35.  Ms. Yerry contacted Mr. Kindlon who represented her in her appeal of the trespassing conviction.  See id. at 11-12, ¶ 35.  Mr. Kindlon informed plaintiff and Ms. Yerry that he and Ms. Phelan came to an agreement about plaintiff's appeal and retrial because Ms. Phelan agreed that there were errors at plaintiff's trial.  See id. at 12, ¶ 37.  Ms. Yerry contacted Mr. Kindlon multiples times concerning court records, but he did not respond.  See id. at 12-13, ¶¶ 38-41.  On June 1, 2021, Mr. Kindlon e-mailed Ms. Yerry explaining that plaintiff would be offered a plea deal in which he could plead guilty to a misdemeanor if he dismissed his appeal, and he would not have to go to prison.  See id. at 13, ¶ 43.  Plaintiff and Ms. Yerry eventually received trial transcripts and plaintiff alleges that they were alerted.  See id. at 14, ¶ 47.

Plaintiff and Ms. Yerry hired Attorney Matthew Hug to appeal plaintiff's conviction.  See Compl. at 14, ¶ 52.  Ms. Yerry learned that Mr. Kindlon never filed a notice of appeal, but signed an affirmation in support of a motion to extend the time to perfect an appeal.  See id. at 15, ¶ 53.  Plaintiff's appeal was dismissed on May 10, 2022, and he filed an application to the Court of Appeals on May 17, 2022.  See id. at 16, ¶¶ 56-57.

Plaintiff contends that defendant Trooper Nick Dziamba charged him with criminal contempt in the second degree and harassment in the second degree on July 14, 2022, after his neighbors "made up random complaints about the Plaintiff yelling in his backyard."  Compl. at 16, ¶ 58.  Justice Waldron remanded plaintiff to jail on October 24, 2022, pending a presentence investigation report.  See id. at 17, ¶ 63.  Justice Waldron sentenced plaintiff to six months' imprisonment on December 6, 2022.  See id. at 17, ¶ 66.

In March 2023, Ms. Yerry discovered a 2016 e-mail from Trooper Lewicki in which he placed plaintiff's home on "house watch."  Compl. at 18, ¶ 69.  Plaintiff alleges that he hired a private detective who spoke to two jurors from plaintiff's criminal possession of a weapon trial.  See Compl. at 19, ¶ 73.  One juror stated that the jurors were confused about one of the charges.  See id.

Plaintiff alleges violations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and alleges a conspiracy claim pursuant to 42 U.S.C. §§ 1983, 1985. See Compl. at 19.

### III.  Analysis

### A.  Judicial Immunity

Plaintiff seeks to sue former Saratoga Town Justice Daniel Waldon, and Saratoga Town Justices Charles Sherman and John McCarron.  See Compl. at 5.

The Eleventh Amendment to the U.S. Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress."  Kisembo v. N.Y.S. Office of Children & Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)).  "This jurisdictional bar applies regardless of the nature of the relief sought."  Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).'" Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

 "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions."  Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v.

Waco, 502 U.S. 9, 9-10 (1991) (per curiam)).[3]  "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'"  Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)).  "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly."  Id. (citation omitted).  "Judicial immunity is immunity from suit, not just immunity from the assessment of damages."  Id. (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'"  Id. (quoting Mireles, 502 U.S. at 11-12).  "Injunctive relief against judges is also barred 'unless a declaratory decree was violated or declaratory relief was unavailable.'"  Id. (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011)).

As for Justice Waldron, plaintiff alleges that Justice Waldron denied a motion to dismiss, sentenced him, and remanded him to jail.  See Compl. at 7, ¶ 10; 10, ¶ 30; 17, ¶¶ 63, 66.  Plaintiff alleges that Justices Sherman and McCarron presided over a February 7, 2023, conference concerning protection order violations.  See id. at 18, ¶ 68.  Plaintiff also contends that Justices "McCarron and Sherman have not responded to Matthew Hug's Notice of Omnibus Motion requesting dismissal."  Id. at 23, ¶ 96.  Plaintiff does not allege that any of the town justices acted absent jurisdiction or outside the bounds of their judicial authority.  See generally id.  As the allegations concern conduct taken in the town justices' capacities as judges, they are immune from suit.

---

[3] All unpublished decisions cited in this Report-Recommendation and Order have been provided to plaintiff, unless noted otherwise.

See Publicola v. Lomenzo, No. 1:21-CV-1303 (DNH), 2022 WL 1027099, at *11

(N.D.N.Y. Apr. 5, 2022) ("Upon review, [the] plaintiff's § 1983 claims against Town

Justice Lomenzo . . . must be dismissed . . . ."), appeal dismissed, 54 F.4th 108 (2d Cir.

2022); Burdick v. Town of Schroeppel, 717 F. App'x 92, 93 (2d Cir. 2018) (summary

order) (affirming district court's conclusion that town justice was entitled to judicial

immunity).   Thus, it is recommended that the claims against the town justices be

dismissed.

### B.  Prosecutorial Immunity

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct

that is 'intimately associated with the judicial phase of the criminal process.'"   Giraldo v.

Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pachtman, 424 U.S. 409,

430 (1976)).   "This immunity attaches to conduct in court, as well as conduct

'preliminary to the initiation of a prosecution and actions apart from the courtroom.'"   Id.

(citation omitted).   "Prosecutorial immunity from § 1983 liability is broadly defined,

covering virtually all acts, regardless of motivation, associated with [the prosecutor's]

function as an advocate."   Id. (quotation marks omitted) (alteration in original) (quoting

Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995)).   "[A] prosecutor's functions

preliminary to the initiation of proceedings include 'whether to present a case to a grand

jury, whether to file an information, whether and when to prosecute, whether to dismiss

an indictment against particular defendants, which witnesses to call, and what other

evidence to present.'"   Id. (quoting Imbler, 424 U.S. at 431 n.33); see also LoPorto v.

Cnty. of Rensselaer, No. 1:15-CV-0866 (LEK/DJS), 2018 WL 4565768, at *7 (N.D.N.Y.

Sept. 24, 2018) ("The initiation of a prosecution is an essential element of a malicious

11

prosecution claim, and so prosecutors are generally immune to malicious prosecution claims.").

Additionally, "[i]n <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 344 (2009), the Supreme Court extended prosecutorial immunity to claims against a district attorney for failure to properly train and supervise assistant prosecutors . . . ." <u>Morris v. Martin</u> (NAM/TWD), No. 5:16-CV-00601, 2017 WL 1047328, at *5 (N.D.N.Y. Jan. 5, 2017), <u>report and recommendation adopted</u>, 2017 WL 1090019 (N.D.N.Y. Mar. 22, 2017). "In order to sustain a § 1983 claim against a district attorney as a municipal policymaker, a plaintiff must show that he suffered a constitutional violation and that the violation resulted from an identified municipal policy or custom." <u>Wilkins v. Soares</u>, No. 8:20-CV-0116 (LEK/CFH), 2020 WL 3286507, at *4 (N.D.N.Y. June 18, 2020) (citing <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658 (1978)).

> A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality; (2) an action taken by an official who is responsible for establishing municipal policies with respect to the subject matter in question; (3) an unlawful practice by subordinate officials so permanent and widespread as to practically have the force of law; or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact[.]

<u>Id.</u> (internal citations omitted).

Plaintiff seeks to sue Saratoga County Attorney Michelle Granger, Saratoga County District Attorney Karen Heggen, Assistant District Attorney Rachel Welch Phelan, and Assistant District Attorney Anna Besson. <u>See</u> Compl. at 3-4.

Plaintiff's complaint contains allegations against Attorney Welch in her capacity as the prosecutor in Ms. Yerry's trespassing case and in plaintiff's criminal possession case. <u>See</u> Compl. at 9, ¶¶ 22, 24; 11, ¶ 35. Plaintiff alleges that Attorney Heggen

"failed to properly train and supervise" Attorney Phelan.  Compl. at 20-21, 23, 25-27, ¶¶ 78, 85, 95, 105, 110, 117.  Plaintiff alleges that Attorney "Besson continues to prosecute the Plaintiff on one count of Criminal Contempt Second Degree from May 25, 2020, one count of Criminal Contempt Second Degree from July 14, 2020, and one count of Harassment Second Degree from July 14, 2020."  Compl. at 23, ¶ 94.  Plaintiff's complaint does not contain any allegations against Attorney Granger.  See generally id.

As plaintiff seeks to sue the named prosecutors for their roles in prosecuting him, the prosecutors are absolutely immune from suit.  See Giraldo, 694 F.3d at 165.  To the extent plaintiff seeks to sue Attorney Heggen for a failure to train, he does not identify a policy or custom that she created or promulgated which violated his constitutional rights.  Thus, he has failed to state a claim for Monell liability.  It is recommended that plaintiff's claims against the prosecutors be dismissed.

### C.  Defense Counsel

Section 1983 permits a person to recover damages for the deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory."  42 U.S.C. § 1983.  "[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."  Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997); see also Blount v. Cnty. of Onondaga, No. 5:20-CV-937 (GTS/TWD), 2020 WL 9264843, at *7 (N.D.N.Y. Oct. 19, 2020) ("Private attorneys, whether court appointed or privately retained, are generally not liable under Section 1983. . . .  Because of this lack of state action, [the p]laintiff's claims against his criminal defense attorneys are not cognizable under Section 1983."), report and recommendation adopted, 2021 WL 958456 (N.D.N.Y. Mar.

15, 2021).  "In addition, a section 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel.'"  <u>Welch v. Schenectady Cnty.</u>, No. 1:22-CV-9 (DNH/DJS), 2022 WL 3904113, at *2 (N.D.N.Y. Aug. 10, 2022) (citation omitted), <u>report and recommendation adopted</u>, 2022 WL 3908798 (N.D.N.Y. Aug. 30, 2022).

Plaintiff seeks to sue Attorney Lee Kindlon for his actions taken as his and Ms. Yerry's criminal defense attorney.  <u>See</u> Compl. at 27-28, ¶¶ 120-22.  Attorney Kindlon is not a state actor.  Plaintiff summarily asserts that Attorney Kindlon "conspired with government officials to deprive the Plaintiff of his civil rights to due process."  <u>Id.</u> at 28, ¶ 121.  However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  <u>Ciambriello v. Cnty. of Nassau</u>, 292 F.3d 307, 324 (2d Cir. 2002).  Thus, Attorney Kindlon is not liable under § 1983 and it is recommended that the claims against him be dismissed.

### D.  Statute of Limitations

"The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."  <u>Smith v. Campbell</u>, 782 F.3d 93, 100 (2d Cir. 2015) (quoting <u>Shomo v. City of New York</u>, 579 F.3d 176, 181 (2d Cir. 2009)).  A "claim accrues when the plaintiff knows or has reason to know of the harm."  <u>Connolly v. McCall</u>, 254 F.3d 36, 41 (2d Cir. 2001) (per curiam) (citation and quotation marks omitted).  "Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal at this stage is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that a plaintiff submits."  <u>Velez v. Paredez</u>, No. 9:22-CV-0362 (LEK/ML), 2022 WL 2904380, at *5 (N.D.N.Y. July 22, 2022) (citing <u>Pino v.</u>

Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding that, for purposes of an initial review under 28 U.S.C. § 1915, a court "may" find "that a complaint is based on an indisputably meritless legal theory" if an affirmative defense, such as the statute of limitations, "appears on the face of the complaint"); Akassy v. Hardy, 887 F.3d 91, 95 (2d Cir. 2018) (confirming that *sua sponte* dismissals for failure to state a claim under the *in forma pauperis* statute are appropriate when the "inclusion of dates in the complaint indicat[e] that the action is untimely")).

Further, "[i]n malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution 'terminate[s] in the plaintiff's favor.'" Spak v. Phillips, 857 F.3d 458, 462 (2d Cir. 2017) (alteration in original) (quoting Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014) (en banc)). "A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended." Id. (quoting Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995)).

Here, plaintiff seeks to bring his complaint concerning allegations from January 25, 2017, to the present. See Compl. at 6, ¶ 4; 11, ¶ 34. First, plaintiff does not allege that all of his convictions have resulted in a favorable termination. Insofar as plaintiff was acquitted of illegal discharge of a weapon in 2019, he would have had to bring his claim by 2022. See Compl. at 10, ¶ 26. Second, the only named defendants who are not immune from suit under judicial or prosecutorial immunity are the law enforcement defendants: Lewicki, Martin, Dziamba, Zurlo, Brownell, Carey, and Brady.

Plaintiff's allegations against a majority of the officers are time barred. His latest allegation against Deputy Brady was that he charged plaintiff with criminal contempt in May 2020. See Compl. at 11, ¶ 32. He contends that Deputy Brownell falsely testified

at his trial on October 28, 2019.  See id. 9, ¶ 23.  Plaintiff states that Sheriff Zurlo did not

respond to Ms. Yerry's phone calls on March 19, 2019.  See id. at 9, ¶ 19. He alleges

that Deputy Carey parked on Ms. Yerry's property on April 12, 2018.  See id. at 8, ¶¶

13-14.  Finally, he states that Trooper Martin held Ms. Yerry's arm and made her get the

guns out of her house on January 25, 2017.  See id. at 7, ¶ 6.  The three-year statute of

limitations ran for these claims between January 2020 and May 2023.  Thus, plaintiff

cannot bring his claims against defendants Brady, Brownell, Zurlo, Carey, and Martin.  It

is recommended that those claims be dismissed.  See Ajamian v. Zakarian, No. 1:14-

CV-321 (DNH/TWD), 2014 WL 4247784, at *5, n.4 (N.D.N.Y. Aug. 26, 2014) ("Where it

is clear from the face of the complaint that a claim is barred by the applicable statute of

limitations, the claim is subject to dismissal for failure to state a claim on § 1915(e)(2)

(B) review even though the statute of limitations bar is an affirmative defense.").

However, out of deference to plaintiff's pro se status, the undersigned recommends

dismissal without prejudice.  See Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007)

(remanding the district court's sua sponte dismissal of a complaint because although

the statute of limitations had run, "[t]he District Court could not tell from the face of [the

plaintiff's] complaint whether he might have meritorious tolling arguments.").

    As to Trooper Lewicki, plaintiff contends that Trooper Lewicki's charged plaintiff

with criminal possession of a weapon and illegal discharge of a firearm on January 25,

2017.  See Compl. at 6-7, ¶¶ 4, 9.  This claim is time barred as plaintiff would have had

to bring a claim by January 2020.  However, plaintiff contends that on March 30, 2023,

Ms. Yerry learned that Lewicki sent an e-mail in 2016 which placed plaintiff's house on

"watch."  Id. at 18, ¶ 69.  Thus, because plaintiff did not learn of this until 2023, the

statute of limitations may not have run, and the undersigned will address whether plaintiff has stated a claim.  Similarly, his claims against Trooper Dziamba do not appear to be time barred as his latest allegation against Trooper Dziamba is that he charged plaintiff with crimes on July 14, 2022.  See id. at 16, ¶ 58.  Thus, the undersigned will also address whether plaintiff has stated a claim against Trooper Dziamba.

### E.  Failure to State a Claim

Plaintiff alleges that on March 30, 2023, following a FOIA request, Ms. Yerry learned that Trooper Lewicki placed plaintiff's house on a "watch" in 2016.  Compl. at 18, ¶ 69.  The e-mail from Trooper Lewicki indicated that plaintiff "expressed disdain and extreme dislike for police" and that he kept "a shotgun nearby[.]"  Id.  Plaintiff contends that he was denied due process "when he was unfairly labeled or listed as requiring 'house watch' by Defendant Lewicki[.]"  Id. at 20, ¶ 77.

"A procedural due process analysis proceeds with two questions.  '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  Shakur v. Selsky, 391 F.3d 106, 118 (2d Cir. 2004) (quoting Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989)).  Plaintiff does not explain what liberty or property interest was violated by Trooper Lewicki placing plaintiff's house on "watch."  Compl. at 18, ¶ 69.  Even assuming he had stated a recognized liberty or property interest, he does not allege what procedures were taken to place his home on watch, what procedures should have taken place, or how any

procedures were inadequate.  Thus, plaintiff's conclusory allegation that Trooper

Lewicki's conduct violated his due process rights is insufficient to state a claim.

Plaintiff also references an unreasonable search and seizure.  See Compl. at 20,

¶ 77.  The Supreme Court has "held that visual observation is no 'search' at all . . . ."

Kyllo v. United States, 533 U.S. 27, 32 (2001) (quoting Dow Chemical Co. v. United

States, 476 U.S. 227, 234-235, 239 (1986)).  As such, plaintiff's allegations that Trooper

Lewicki placed his house on "watch" does not state a Fourth Amendment claim.  See

Palmieri v. Lynch, 392 F.3d 73, 81 (2d Cir. 2004) (citations omitted) (reiterating that "a

merely 'visual observation'" is not a search).

Plaintiff seeks to bring false imprisonment claims.  See Compl. at 25.  "Under

New York law, the elements of a false arrest and false imprisonment claim are: '(1) the

defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement

was not otherwise privileged.'"  Hernandez v. United States, 939 F.3d 191, 199 (2d Cir.

2019) (quoting McGowan v. United States, 825 F.3d 118, 126 (2d Cir. 2016) (per

curiam)).  "For purposes of the privilege element of a false arrest and imprisonment

claim, an act of confinement is privileged if it stems from a lawful arrest supported by

probable cause."  Id. (citation omitted).  "Officers have probable cause when 'they have

knowledge or reasonably trustworthy information of facts and circumstances that are

sufficient to warrant a person of reasonable caution in the belief that the person to be

arrested has committed or is committing a crime.'"  Id. (quoting Posr v. Court Officer

Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999)).

Plaintiff alleges that he "committed no crime[,]" but also states that he was convicted and sentenced by a town justice.  Compl. at 26, ¶ 109; <u>see also id.</u> at 10, ¶ 26; 17, ¶ 66.  Insofar as the charges and subsequent convictions and sentences were based on probable cause, plaintiff cannot state a false arrest or imprisonment claim.

Finally, plaintiff states that the officers violated his First Amendment rights by arresting him for his free speech.  <u>See</u> Compl. at 22-23, ¶¶ 88-96.  "To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech."  <u>Cox v. Warwick Valley Cent. Sch. Dist.</u>, 654 F.3d 267, 272 (2d Cir. 2011).  "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim."  <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1726 (2019).  "Speech is protected under the First Amendment when it can be 'fairly characterized as constituting speech on a matter of public concern.'"  <u>Burns v. Cook</u>, 458 F. Supp. 2d 29, 39 (N.D.N.Y. 2006) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983)).  "[W]here matters of purely private significance are at issue, First Amendment protections are often less rigorous.  That is because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest[.]"  <u>Snyder v. Phelps</u>, 562 U.S. 443, 452 (2011) (citations and quotation marks omitted) (alteration in original).

Plaintiff alleges that defendant Dziamba violated his free speech rights by arresting and charging him on July 15, 2022.  <u>See</u> Compl. at 23, ¶ 92.  Plaintiff does not allege what he was discussing on his front porch or that Dziamba had any knowledge

about plaintiff's specific speech.  Plaintiff contends that "[a]ll Defendants listed violated" his free speech rights "by the continued prosecution of the Plaintiff."  Id. at 23, ¶ 93.  He does not contend what speech "[a]ll Defendants" have prosecuted him for.  Id.  Thus, he has not alleged that his speech was protected, and he has not sufficiently alleged a First Amendment claim.

Regardless, because delving into plaintiff's claims would run afoul of the Younger and Rooker-Feldman doctrines, the undersigned recommends dismissing the claims.

### F.  Younger and Rooker-Feldman

To the extent state criminal charges are still pending against plaintiff, the Court should abstain from interfering under the Younger doctrine.  Under Younger v. Harris, 401 U.S. 37 (1971), "it is appropriate for a federal court to abstain from exercising jurisdiction where . . . (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court."  McCulley v. N.Y.S. Dep't of Env't Conservation, 593 F. Supp. 2d 422, 430 (N.D.N.Y. 2006) (citation omitted).  "[S]o long as the constitutional claims of [plaintiffs] can be determined in the state proceedings . . . the federal courts should abstain."  Spargo v. New York State Comm'n on Jud. Conduct, 351 F.3d 65, 76-77 (2d Cir. 2003) (second alteration in original) (quotation marks omitted) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 434-35 (1982)).  "[T]o avoid abstention, plaintiffs must demonstrate that state law bars the effective consideration of their constitutional claims."  Id. at 78.  "The relevant question under *Younger* is 'whether the state's procedural remedies *could* provide the

relief sought [not] . . . whether the state *will* provide' the constitutional ruling which the plaintiff seeks." Id. at 79 (alteration in original) (citation omitted).

Plaintiff requests "[a]n immediate injunction . . . to stop the prosecution of the Plaintiff on the Criminal Contempt and Harassment Charges" Compl. at 29, ¶ 130.  The charges are still pending, they implicate important state interests in administering state criminal charges, and plaintiff can appeal a conviction or sentence in state court. See Kirschner v. Klemons, 225 F.3d 227, 233 (2d Cir. 2000) (citation omitted) ("In *Younger* . . . , the Supreme Court stated the principle that 'a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate.'"). Plaintiff has not alleged bad faith or harassment on the named defendants' part but contends that his neighbors' complaints which led to the charges were false. See Compl. at 16, ¶ 58.  This is insufficient to overcome the presumption that federal courts should not interfere in ongoing state criminal matters. See Anilao v. Spota, 27 F.4th 855, 866 (2d Cir. 2022) (citation omitted) ("Absolute immunity . . . shielded the prosecutors' conduct because the indictment contained allegations that, even if completely false, could authorize the prosecutors to prosecute . . . ."), cert. denied sub nom. Anilao v. Spota, III, 143 S. Ct. 1781 (2023).  Thus, it is recommended that any claims be dismissed.

As for plaintiff's convictions, "[t]he *Rooker–Feldman* doctrine effectively precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments.'" DeMeo v. Kean, 754 F. Supp. 2d 435, 448 (N.D.N.Y. 2010) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam)).  The "doctrine applies if . . . :

(1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court." Id. (citing V.S. v. Muhammad, 595 F.3d 426, 430 (2d Cir. 2010)).

In plaintiff's requests for relief, he does not state that he wants his prior convictions to be overturned. See generally Compl. at 29-30. He does, however, ask that the Court declare that defendants' conduct violated his civil rights. See id. at 29, ¶ 129. Such a request would require the Court to review and reject the state criminal judgments against him. This is not permitted under the Rooker-Feldman doctrine, and it is recommended that any claims related to plaintiff's prior convictions and sentences be dismissed.

### G.  Municipal Liability

Plaintiff names Saratoga County as a defendant. See Compl. at 3, ¶ 3.d. To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. at 690-91). Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000). An "official policy or custom" can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute

constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (internal citations omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

Plaintiff contends that Saratoga County "failed to properly train and supervise" Attorney Phelan and other "County employees."  Compl. at 21-22, 24-27, ¶¶ 85, 91, 100, 105, 110, 117.  Plaintiff does not include any allegations in his complaint concerning municipal conduct that states a Monell claim.  He does not allege what actions were taken by the County, or by its employees and which the County knew about.  See generally id.  Thus, he has failed to state a municipal liability claim against Saratoga County and it is recommended that any such claims be dismissed.

### H.  Conspiracy

To state a conspiracy claim under 42 U.S.C. § 1985(3),

a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  "In addition, 'there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL

3121611, at *6 (N.D.N.Y. Feb. 12, 2018) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)), report and recommendation adopted, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), aff'd, 768 F. App'x 66 (2d Cir. 2019) (summary order).  "Moreover, 42 U.S.C. § 1985(3) 'allows damages whenever two or more 'persons' conspire to violate the civil rights of another.'"  Id. (quoting Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979).  "A municipality is a 'person' for the purposes of a § 1985(3) claim only if one of the Monell factors . . . applies."  Id. (citation omitted).  However, "the 'intra-agency conspiracy' doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together."  Id. (quoting Everson v. N.Y. City Transit Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002)).  "Although courts first applied this doctrine to cases involving public corporations, they have subsequently held that the doctrine is applicable to municipal entities and their officers, agents, and employees."  Griffin-Nolan v. Providence Wash. Ins. Co., No. 5:04-CV-1453 (FJS/GJD), 2005 WL 1460424, at *10 (N.D.N.Y. June 20, 2005) (citations omitted).

"Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Walker v. O'Connor, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *4 (N.D.N.Y. June 29, 2022) (citation omitted), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).  "Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation."  Id. (citing Oliver v. Penny, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (summary order) (concluding plaintiff's § 1985

conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation")).

Plaintiff has not alleged a conspiracy claim sufficient to withstand initial review. First, he has not stated a viable underlying constitutional claim as some of the defendants are immune from suit, most of his claims are barred by the statute of limitations, and/or the Court is precluded from interfering in the claims.  Thus, a potential conspiracy claim fails as a matter of law.  See Oliver, 2022 WL 2165814, at *3.  Second, plaintiff has not alleged that any of the defendants acted together to deprive plaintiff of any specific rights on any discriminatory basis.  See generally Compl.  Third, plaintiff's allegations would likely be barred by the "intra-agency conspiracy" doctrine to the extent the defendants worked for the same entity.  Griffin-Nolan, 2005 WL 1460424, at *10. Thus, he has failed to allege a conspiracy claim and it is recommended that the claim be dismissed.[4]

## IV.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

---

[4] Robert Dougal is the only named plaintiff in the complaint.  See Compl. at 2, ¶ 2.  However, throughout much of the complaint, allegations are raised concerning Ms. Yerry.  See generally id.  In federal court, 28 U.S.C. § 1654 "does not permit 'unlicensed laymen to represent anyone else other than themselves.'" Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam) (citation omitted).  "This principle further extends to non-attorneys' attempts to bring suit on behalf of adults who are not competent to handle their own affairs."  Galanova v. Portnoy, 432 F. Supp. 3d 433, 442 (S.D.N.Y. 2020) (citing Berrios v. New York City Hous. Auth., 564 F.3d 130, 133 (2d. Cir. 2009)).  The undersigned cautions plaintiff that he cannot brings claims on Ms. Yerry's behalf as a non-attorney.  The same goes for Ms. Yerry, in that she cannot bring claims on plaintiff's behalf.

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) as alleged against Michelle Granger, Karen Heggen, Rachael Phelan, Anna Besson, Daniel Waldron, Charles Sherman, John McCarron, and Lee Kindlon be **DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) as alleged against Saratoga County, Eric Lewicki, Christopher Martin, Nick Dziamba, Michael Zurlo, C.J. Brownell, Brent Dupras, John Carey, and William Brady be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**;[5] and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed

---

[5] Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's Report-Recommendation & Order and plaintiff amends his complaint, plaintiff is advised that his amended pleading cannot incorporate a prior pleading or its exhibits by reference.  An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[6]

      Dated:  October 3, 2023
             Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[6] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).