**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

ROBERT DOUGAL,

                     Plaintiff,

      v.

ERIC LEWICKI, et al.,                      No. 1:23-CV-1167
                                              (DNH/CFH)

                     Defendants.

─────────────────────────────────

**APPEARANCES:**

Robert Dougal
294 Wilbur Road
Schuylerville, New York 12871
Plaintiff pro se

**REPORT-RECOMMENDATION AND ORDER**

**I. Background**

      Presently before the Court for review is plaintiff pro se Robert Dougal's amended complaint pursuant to 28 U.S.C. § 1915.  See N.D.N.Y. L.R. 72.3(d); Dkt. No. 8.  On October 3, 2023, the undersigned, as relevant here, recommended that (1) plaintiff's claims against Michelle Granger, Karen Heggen, Rachael Phelan, Anna Besson, Daniel Waldron, Charles Sherman, John McCarron, and Lee Kindlon be dismissed with prejudice and without leave to amend; and (2) plaintiff's claims against Saratoga County, Eric Lewicki, Christopher Martin, Nick Dziamba, Michael Zurlo, C.J. Brownell, Brent Dupras, John Carey, and William Brady be dismissed without prejudice and with leave to amend.  See Dkt. No. 25.

In dismissing with leave to amend on some of the claims, the Court concluded those claims needed to be dismissed due to the expiration of the statutes of limitations, for failure to state a claim, and due to the Rooker-Feldman doctrine and the Younger abstention doctrine.   See Dkt. No. 3 at 20-21.  Addressing first the statute of limitations issue, the Court noted that the most recent allegation against officer Brady occurred in May 2020, against Deputy Brownell in October 2019, against Sheriff Zurlo in March 2019, against Deputy Carey in April 2019, and against Trooper Martin in 2018.   See Dkt. No. 3 at 16.  In the October 3, 2023, Report-Recommendation & Order, undersigned, therefore, recognized that plaintiff's claims against Brady, Brownell, Zurlo, Carey, and Martin are barred by the statute of limitations because plaintiff commenced this action greater than three years after the claims accrued; however, out of deference to the pro se plaintiff, and because it was potentially possible that plaintiff could raise tolling arguments, the undersigned recommended leave to amend.  See Dkt. No. 3 at 16.

In the October 3, 2023, Report-Recommendation & Order, the Court noted that plaintiff's claims against Lewicki were also time barred by the statute of limitations because plaintiff did not commence this action by January 2020.  See Dkt. No. 3 at 16. However, the Court noted that plaintiff made an allegation that he discovered, on March 30, 2023, that Lewicki sent an e-mail in 2016 placing plaintiff's house on watch.   See id. Thus, the Court concluded that there could potentially be an argument that the statute of limitations as it relates to Trooper Lewicki was tolled.  See id.  The Court did not decide the tolling issue, but proceeded to assess whether plaintiff stated a claim against Lewicki.  See id. at 16-17.  The Court also noted that plaintiff's "latest allegation" against

Trooper Dziamba occurred on July 14, 2022; thus, it was not time barred.  See id. at 17.
The Court next assessed whether plaintiff stated a claim against Trooper Lewicki or
Trooper Dziamba.  See id. at 17-20.

As for the merits of the claims against Trooper Lewicki, the Court concluded that,
even if plaintiff were to demonstrate that the statute of limitation as it relates to his
claims against Lewicki was tolled, plaintiff failed to state claim for a violation of his
procedural due process rights.  See Dkt. No. 3 at 17.  The Court concluded that plaintiff
did not demonstrate that he had a liberty or property interest that was violated by
Trooper Lewicki's placing his home on a watch, nor did he demonstrate what
procedures were constitutionally insufficient or inadequate.  See id. at 17-18.  The Court
further concluded that, to the extent plaintiff was attempting to argue that placing his
house on a watch was an unreasonable search and seizure, there was no Fourth
Amendment violation for placing his home on a watch.  See id. at 18.

As for the claims against Trooper Dziamba, the Court noted that plaintiff alleged
that Dziamba charged plaintiff with Criminal Contempt in the Second Degree on July 14,
2022, after neighbors "made random complaints about the Plaintiff yelling in his
backyard" despite the fact that there were no statements "that the Plaintiff specifically
directed any yelling at [the neighbors]."  Dkt. No. 3 at 17 (citing Dkt. No. 1 at 16).  The
Court noted that plaintiff alleged that Dziamba violated the First Amendment by
arresting him for his free speech. See Dkt. No, 3 at 19.  In reviewing this claim, the
Court observed that plaintiff "does not allege what he was discussing on his front porch
or that Dziamba had any knowledge about plaintiff's specific speech," but "does not
contend what speech" Dziamba arrested or charged him for.  Id. at 20.  Because plaintiff

"has not alleged that his speech was protected . . . he has not sufficiently alleged a First Amendment claim." Id. at 20.

For claims against Troopers Dziamba and Lewicki, the Court concluded that such claims also "would run afoul of the Younger and Rooker-Feldman doctrines." Dkt. No. 3 at 20. It noted that, if criminal charges "are still pending against plaintiff, the Court should abstain rom interfering under the Younger doctrine." Id. Based on the allegations set forth in plaintiff's original complaint, the Court observed that it appeared that the criminal contempt and harassment charges were pending, and that plaintiff failed to demonstrate that the Court should interfere with ongoing state criminal matters. See id. at 21. As for any convictions, the Court concluded that the Rooker-Feldman doctrine prevents the Court from exercising appellate jurisdiction over final state court judgments." Id. The Court observed that plaintiff did not seek for his convictions to be overturned, but a declaration that the prosecution and convictions violated his civil rights, which would "require the Court to reject and review the state criminal judgments against him." Id. Thus, the Court dismissed any claims related to plaintiff's prior convictions and sentences. See id. at 22, 27. Despite the statute of limitations issues, conclusion that plaintiff failed to state a claim upon which relief could be granted, and the apparent Younger and Rooker-Feldman bars, Court afforded plaintiff an opportunity to amend on these claims due to special solicitude.

As to the claims against Saratoga County, the Court noted that plaintiff stated merely that Saratoga County failed to properly train and supervise, but "does not include any allegations in his complaint concerning municipal conduct that states a Monell claim." Dkt. No. 3 at 23. The Court provided that plaintiff's complaint does not allege

what actions were taken by the County, or by its employees and which the County knew about."  Id.  Thus, the Court dismissed any municipal liability claim against Saratoga County.  See id.

On October 25, 2023, the Court adopted the Report-Recommendation & Order in its entirety.  See Dkt. No. 7.  On November 17, 2023, plaintiff filed an amended complaint.  See Dkt. No. 8.

## II.  **Review of Amended Complaint**

### A. **Amended Complaint**

Plaintiff's amended complaint is very similar[1] to the original complaint.  See Dkt. Nos. 1, 8.  In the amended complaint, plaintiff removed the claims and defendants against whom the Court dismissed with prejudice.  See Dkt. No. 8.  Plaintiff's only acknowledgement as to the statute of limitations issue identified in the October 2, 2023, Report-Recommendation & Order is to contend that, because he did not discover Lewicki's October 24, 2016, house watch e-mail until March 30, 2023, in response to a FOIA request, and the 2016 email was withheld from his defense attorney, March 30, 2023, is the date that "should be considered when determining Statutes of Limitations." Id. at 20.

### B. **Analysis: Section 1915 Review**

#### 1.  **Statutes of Limitations**

---

[1]  Because the amended complaint repeats the same facts as the original, the Court will not repeat them here. Unless otherwise indicated, this Report-Recommendation & Order will set forth here only new facts or allegations.  Familiarity with the original complaint, October 3, 2023, Report-Recommendation & Order, and October 25, 2023, Order is presumed.  See Dkt. Nos. 1, 4, 7.  For further details regarding the facts and claims underlying this action, reference is made to the original complaint, October 3, 2023, Report-Recommendation & Order, and October 25, 2023, Order.  See id.

Nothing in plaintiff's amended complaint demonstrates the tolling of the statutes of limitations as it relates to the claims against Brady, Brownell, Zurlo, Carey, or Martin. See Dkt. No. 8.  Further, the allegations against Deputy Carey (he parked on Ms. Yerry's property) and Sheriff Zurlo (he did not respond to Ms. Yerry's phone calls) do not state any prima facie claim for constitutional violations, nor does plaintiff have standing to raise them.  As the October 3, 2023, Report-Recommendation & Order, noted, as the sole plaintiff in this case, Mr. Dougal cannot raise claims stating that Ms. Yerry's constitutional rights[2] were violated because plaintiff cannot represent Ms. Yerry or bring claims on her behalf.  See Dkt. No. 4 at 25 n.4.   Accordingly, it is recommended that plaintiff's claims against Deputy Brownell, Sheriff Zurlo, and Deputy Carey, and Trooper Martin be dismissed due to the expiration of the statutes of limitations as plaintiff failed to show that there exists any tolling as it relates to claims against them.  Alternatively, it is recommended that plaintiff's claims against Deputy Carey and Sheriff Zurlo be dismissed for failing to state a claim as such actions to not raise to the level of a constitutional violation and because plaintiff lacks standing to bring claims on behalf of Ms. Yerry.

As for the claims against Trooper Lewicki, regarding the statute of limitations, the undersigned concludes that plaintiff has failed to demonstrate the applicability of equitable tolling of the statute of limitations.  As noted on the October 3, 2023, Report-Recommendation & Order, "plaintiff contends that Trooper Lewicki[] charged plaintiff with criminal possession of a weapon and illegal discharge of a firearm on January 2, 2017.  The Court interpreted plaintiff's claims against Trooper Lewicki as unreasonable

---

2   As a pro se plaintiff, Dougal would not be able to raise any claims, constitutional or otherwise, on Ms. Yerry's behalf.

search and seizure and procedural due process violations and concluded that plaintiff's claim against Trooper Lewicki is time barred as plaintiff would have had to bring a claim by January 2020.  See Dkt. No. 3 at 16, 17-18.

In his amended complaint, plaintiff contends that the statute of limitations relating to his claims against Lewicki should be tolled because he did not discover the e-mail Lewicki sent in 2016 relating to placing plaintiff's home on watch until March 2023.

has failed to demonstrate that Ms. Yerry's discovery – and, thus, his discovery – of the 2016 e-mail in March 2023, which revealed to plaintiff that Lewicki placed his home on "watch," tolls the statute of limitations for his procedural due process and unreasonable search and seizure claims against Lewicki relating to the "watch."  First, although plaintiff indicates that the 2016 e-mail was never turned over to his defense attorney, he does not demonstrate that, despite all due diligence, he was unable to discover the e-mail sooner.  See Dkt. No. 8 at 16.  Due to plaintiff's pro se status, the undersigned will continue the analysis by assuming, for purposes of this review only that plaintiff set forth a prima facie case for tolling as it relates to his substantive due process claim or Fourth Amendment claims against Lewicki.

### 2.  Merits of claims against Lewicki and Dziamba

As for plaintiff's claims against Lewicki, even if equitable tolling applies, the undersigned concludes plaintiff's claims still fail to state a claim upon which relief can be granted for the same reasons set forth in the October 3, 2023, Report-Recommendation & Order, adopted by this Court.  See Dkt. No. 3 at 23.  Plaintiff's amended complaint presents the same facts and allegations against Lewicki as in the original complaint and

presents no grounds upon which the undersigned could conclude differently from the original review.  Accordingly, it is recommended that plaintiff's due process and unreasonable search claims against Trooper Lewicki be dismissed as barred by the statute of limitations, or, in the alternative, for failure to state a claim upon which relief can be granted.  See Dkt. No. 3 at 18.

As for plaintiff's claims against Trooper Dziamba, the Court proceeds to review whether plaintiff's amended complaint cures the defects of the original complaint regarding the failure to state a claim upon which relief could be granted or the Younger and Rooker-Feldman concerns.  Plaintiff's amended complaint again alleges that Dziamba charged him with criminal contempt in the second degree and harassment in the second degree on July 15, 2022.  Dkt. No. 8 at 12 ¶¶44, 22 ¶22.  Plaintiff's amended complaint charges Dziamba with violations of the First Amendment for "arresting, charging, and prosecuting the Plaintiff for speaking to himself while outside working the farm on random days."  Dkt. No. 8 at 21.  Plaintiff further provides that he was charged because "Aime Ferrone and his son, Andrew, made random complaints about the Plaintiff yelling in his backyard."  Id. at 12.  Plaintiff contends that the complainants' depositions lacked anything "that constituted a violation of any order of protection[,]" an "order of protection was not produced and did not accompany the charging documents," and Trooper Dziamba "displayed clear bias against the Plaintiff."  Id. at 21.

Plaintiff's amended complaint fails to cure the defects this Court recognized in his First Amendment claim against Trooper Dziamba.  See Dkt. No. 8 at 21.  In his amended complaint, plaintiff states only that he was "speaking to himself," that he was charged and arrested due to his neighbors' "random complaints" that plaintiff was

"yelling in his backyard," that the complainants' depositions failed to demonstrate that

he said anything that would "constitute[] a violation of any order of protections," and that

Dziamba displayed "bias" against plaintiff.  Dkt. No. 8 at 12, 21.  These allegations are

insufficient to state a First Amendment violation for the reasons set forth in the October

3, 2023, Report-Recommendation & Order.  See Dkt. No. 3.  The undersigned

elaborates by noting that plaintiff does not demonstrate that his speech was protected.

"'For speech to be constitutionally protected, a public employee plaintiff "must have

spoken as a citizen on a matter of 'political, social, or other concern to the community.'"

Dubois v. Beaury, No. 1:20-CV-86 (FJS/CFH), 2021 WL 3207101, at *2 (N.D.N.Y. July

29, 2021), aff'd, No. 21-2096-CV, 2022 WL 1701497 (2d Cir. May 27, 2022) (quoting

Atkinson v. New York State Olympic Reg'l Dev. Auth., 822 F. Supp. 2d 182, 193

(N.D.N.Y. 2011)) (additional citation omitted).  "Speech that 'primarily concerns an issue

that is 'personal in nature and generally related to the speaker's own situation,' . . . does

not address matters of public concern."  Dubois, 2021 WL 3207101, at *2 (quoting

Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011)) (additional citation omitted).

Although plaintiff did not provide the Court with his speech, he makes clear in his

amened complaint that he was "talking to himself" and not directing his speech at his

neighbors and not at Dzambia, who was not even present.  Thus, as plaintiff has

demonstrated that his speech was "personal in nature" and "generally related to [his]

own situation," plaintiff has failed to demonstrate that he engaged in speech protected

by the First Amendment.  Dubois, 2021 WL 3207101, at *2,

Even if plaintiff had demonstrated that he engaged in protected speech, plaintiff's First Amendment claim also fails because the amended complaint does not allege that Officer Dziamba was even aware of the contents of plaintiff's speech or that the arrest was motivated by the speech itself.  Because plaintiff has not contended that Dziamba was aware of the contents of his speech, he has not demonstrated a causal connection between the adverse action and any protected speech.  See Dkt. No. 3 at 19 (quoting Cox v. Warwik Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)).  Indeed, plaintiff's amended complaint supports the opposite: that his speech was not protected speech insofar as he contends that he was speaking only to himself, without any intention of being overheard by others, and that Dziamba did not even hear his speech.  See Dkt. No. 8 at 21 ¶ 78 (noting that plaintiff was "speaking to himself while outside working the farm on random days," and that there was no "direct communication" between plaintiff and complainant); See Dkt. No. 3 at 19 (quoting Snyder v. Phelps, 562 U.S. 443, 452 (2011) ("[W]here matters of purely private significance are at issue, First Amendment protections are often less rigorous.  That is because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest[.]")).

Finally, as the October 3, 2023, Report-Recommendation & Order noted, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim."  Dkt. No. 3 at 19 (quoting Burns v. Cook, 458 F. Supp. 2d 29, 39 (N.D.N.Y. 2006)).  Plaintiff's amended complaint does not demonstrate an absence of probable cause for the arrest.  See generally dkt. no. 8; see Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (holding that a private citizen alleging a First Amendment

retaliation claim against a public official must show that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right . . . . As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken.").

Plaintiff appears to contend that he has not yet been convicted of the charges associated with the July 14, 2022, arrest, and that the charges are still pending.  See Dkt. No. 8 at 22 ("A.D.A. Besson continues to prosecute the Plaintiff on . . . one county of Criminal Contempt Second Degree from July 14, 2022, and one count of Harassment Second Degree from July 14, 2022.").  Further, if the charges are still pending and the matter has not been terminated in plaintiff's favor, it is possible that review by this Court is also barred by Heck v. Humphry's favorable termination rule because, if this Court were to determine, through this litigation, that his July 14, 2022, arrest and apparent prosecution was motivated by his protected speech, it would necessarily call into question the arrest and charges.  See Heck v. Humphry, 512 U.S. 477 (1994); Griffin v. Alexander, No. 9:09-CV-1334 (TJM/DEP), 2011 WL 4343199, at *1 n.2 (N.D.N.Y. Sept. 14, 2011), aff'd, 466 F. App'x 26 (2d Cir. 2012) (citing and quoting McEachin v. Selsky, 225 F. App'x 36, 37 (2d Cir. 2007) (summary order) ("Under the 'favorable termination rule' of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if a determination favorable to the plaintiff in a 42 U.S.C. § 1983 suit 'would necessarily imply the invalidity of his conviction or sentence,' a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages for an

allegedly unlawful conviction under § 1983.").  Thus, pursuant to Heck, plaintiff would be unable to proceed on this First Amendment claim unless and until he could demonstrate that the criminal matter has been terminated in his favor, such as if the charges had been dropped; he had been acquitted; or a conviction, if any, had been overturned.

It is further noted that even if plaintiff disagrees with the arrest and prosecution connected to the July 14, 2022, incident and believes that the complainants' depositions did not demonstrate a violation of an order of protection or that his conduct did not amount to harassment or criminal contempt, this does not demonstrate an absence of probable cause for the arrest, as is required for a First Amendment retaliation claim. See Burns, 458 F. Supp. 2d 29, 39.  Accordingly, because plaintiff's First Amendment claim relating to the July 14, 2022, arrest involving Trooper Dziamba, as plead in the amended complaint, still fails to state a claim upon which relief could be granted, it is recommended that this claim be dismissed.[3]

### 2. **Conspiracy**

Plaintiff's amended complaint seeks to reallege a conspiracy claim under 42 U.S.C. § 1985(3).  See Dkt. No. 8 at 15-20.  As plaintiff fails to state a valid

---

[3] In the October 3, 2023, Report-Recommendation, as noted above, the Court observed that plaintiff's claims that call into question charges that had yet been resolved would be violative of the Younger abstention doctrine and that reviewing his convictions would be violative of the Rooker-Feldman doctrine. The undersigned notes that such review would violate the Rooker-Feldman doctrine if it was demonstrated that there was a final state court judgment, i.e., any appeals had been decided. See, e.g., Hunter v. McMahon, 75 F.4th 62, 69 (2d Cir. 2023).  Further, as noted above, that plaintiff's calling into question the validity of his July 15, 2022, arrest and prosecution, would also appear violative of the Heck v. Humphry, until he could demonstrate favorable termination.  See Dkt. No. 8 at 22, supra at 10.  Indeed, it appears the charges may still be pending before the state courts.  However, because the undersigned concludes that plaintiff's constitutional claims are barred by the statutes of limitation, or, for those that may not be or are not so barred, they fail to state a claim upon which relief could be granted, it need not reach whether these doctrines also bar review of these charges or convictions.

constitutional violation, his claim that defendants Lewicki and others conspired to violate his Fourth, Fifth, and Fourteenth Amendment rights also must fail because there can be no conspiracy to violate an individual's constitutional right if there were no underlying constitutional violations.  See id.; see also dkt. no. 3 at 25.   Further, as the Court also noted in the October 3, 2023, Report-Recommendation & Order, "plaintiff's allegations would likely be barred by the intra-agency conspiracy' doctrine to the extent the defendants worked for the same entity."  Dkt. No. 3 at 25.  Accordingly, as plaintiff did not cure the defects with his conspiracy claim in his amended complaint, it is recommended that plaintiff's conspiracy claim be dismissed.


### 3. **Municipal Liability**

Plaintiff contends that he was denied his medication by Saratoga County and Saratoga County Sheriff Michael Zurlo on various occasions while he was in custody. See Dkt. No. 8 at 27-28.  Plaintiff contends that the denial of his medications is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. See id. at 28.  As noted, in the October 3, 2023, Report-Recommendation & Order, the Court observed that plaintiff named Saratoga County as a defendant but noted that to proceed against a municipality, plaintiff must demonstrate that a denial of his constitutional rights were "'caused by a government custom, policy, or usage of the municipality.'"  Dkt. No. 3 at 22 (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012)).

In the amended complaint, plaintiff states that his medication was withheld "while the Plaintiff as in custody on January 25, 2017," and "Troopers took the Plaintiff to the

Saratoga Hospital because he was sick from withdrawal but did not take the Plaintiff's medication with them."  Dkt. No. 8 at 27.  Plaintiff further states that on January 7, 2020, he was denied "adequate medical care while serving his sentence at the Saratoga County Correctional Facility overseen by Defendant Zurlo" when "the facility withheld the Plaintiff's medications for almost 24 hours."  Id.  Plaintiff alleges that he was "extremely ill and unable to communicate when Ms. Yerry was allowed to visit him that day."  Id.  Plaintiff states that, "[a]fter his release on bail pending appeal, the Plaintiff was diagnosed with atrial fibrillation."  Id.

On October 25, 2022, "the facility withheld the Plaintiff's medications for almost 24 hours, despite being supplied with a list of medications ahead of time" by plaintiff's attorneys."  Dkt. No. 8 at 27.  Plaintiff appears to indicate that the medications were denied "for almost 24 hours when the Plaintiff was taken to the Saratoga Hospital because his blood pressure was dangerously elevated."  Id.  Plaintiff alleges that this withholding of his medications, including an antiarrhythmic and anticoagulant, caused the Plaintiff to fall back into withdrawal and an abnormal heart rhythm and put him at increased risk of stroke."  Id. at 28.  Plaintiff contends that he has "suffered permanent physical and emotional harm as a result."  Id.

Plaintiff alleges that Saratoga County and Zurlo "failed to enforce a proper policy, train and supervise employees regarding the legal requirements and protections applicable to persons as set forth in the U.S. Constitution and other laws."  Dkt. No. 8 at 28.  Plaintiff notes that he is unaware of a specific policy "concerning supplying medications to inmates" because there is none publicly available, but contends that standard procedure is for staff to verify the inmates' medications with the inmates'

pharmacy and in some cases, the inmates' physician, and then supply the medications." Id.

First, because it appears that plaintiff was an arrestee/detainee, not a convicted inmate during these brief incarcerations, the Eighth Amendment does not apply to his claims. Instead, applying special solicitude, it appears that his amended complaint more properly seeks to raise a Fourteenth Amendment medical indifference claim. See, e.g., Trapani v. Dagostino, No. 9:18-CV-0805 (DNH/CFH), 2019 WL 5149795, at *4 (N.D.N.Y. June 10, 2019) ("[The plaintiff's] medical indifference claims against defendants Farley and Fricke during his incarceration as a pretrial detainee must be analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.") (citing Crouch v. Spaulding, No. 9:16-CV-1435 (DNH/DJS), 2019 WL 1004539, at *2 (N.D.N.Y. Jan. 24, 2019), report and recommendation adopted by 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019)). It is noted, however, "[t]he standard for analyzing a pretrial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard.'" Wilson v. Campbell, No. 06-CV-0175 (GLS/RFT), 2008 WL 902187, at *3 (N.D.N.Y. Mar. 31, 2008) (Bourdon v. Roney, 9:99-CV-0769 (LEK/GLS), 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003)).

Second, plaintiff's claims relating to the January 25, 2017, and January 7, 2020, incarcerations are time barred because plaintiff commenced this action[4] more than three years after the statute of limitations accrued, and in his amended complaint, just as in the original pleading, plaintiff provides absolutely no ground for the tolling of this statute of limitations. See Dkt. No. 3 at 14 (citing Smith v. Campbell, 782 F.3d 93, 100

---

[4] Plaintiff commenced this action on September 12, 2023. See Dkt. No. 1.

(2d Cir. 2015)).   Indeed, the claims for medical indifference would accrue on the dates plaintiff provided as the dates of occurrence – January 25, 2017, and January 7, 2020 – because plaintiff was then aware of the alleged harms.  See id. (quoting Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001).  For the January 25, 2017, claim, plaintiff would have had to commence an action by January 25, 2020, and for the January 7, 2020, claim, plaintiff would have had to commence an action by January 7, 2023. Accordingly, because the statute of limitations connected to the January 25, 2017, and January 25, 2020, incidents have expired, it is recommended that any medical indifference claims connected to the January 25, 2017, and January 7, 2020, denials of medication be dismissed.

Plaintiff's municipal liability claim also must fail as pled because plaintiff failed to identify a specific policy or custom pursuant to which Saratoga County and/or Sheriff Zurlo violated plaintiff's constitutional rights.  As plaintiff was advised in the October 3, 2023, Report-Recommendation & Order, plaintiff may only proceed with this claim if he establishes a municipal policy, practice, or custom that resulted in the violation of a constitutional right.  See Dkt. No. 3 at 23.   The Court advised plaintiff that municipalities may only be held liable when the municipality itself violates an individual's constitutional right and that it cannot be held liable under a theory of respondeat superior.  See id. at 22 (quoting Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000)).

"To successfully state a claim for Monell liability, a plaintiff must 'make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for

the municipality.'" Mendez v. Cayuga Cnty., No. 9:21-CV-1090 (BKS/TWD), 2024 WL

1251541, at *2 (N.D.N.Y. Mar. 25, 2024)[5] (quoting Missel v. Cnty. of Monroe, 351 F.

App'x 543, 545 (2d Cir. 2009) (summary order) (citing Vives v. City of N.Y., 524 F.3d

346, 350 (2d Cir. 2008)).

> The existence of a municipal policy or custom may be plead in any of four
> ways: "(1) a policy formally adopted and endorsed by the municipality; (2)
> actions taken by policymaking officials that caused the particular
> deprivation alleged; (3) practices by subordinate officials that are not
> expressly authorized but are so widespread and consistent that
> policymakers must have been aware of them; or (4) a failure by
> policymakers to train or supervise that amounts to deliberate indifference
> to the rights of those who come into contact with the inadequately trained
> or supervised municipal employees." Crawley v. City of Syracuse, 496 F.
> Supp. 3d 718, 729 (N.D.N.Y. 2020) (citing Deferio v. City of Syracuse, 770
> Fed. App'x 587, 589 (2d Cir. 2019) (summary order)). "Once a plaintiff has
> demonstrated the existence of a municipal policy, a plaintiff must then
> establish a causal connection, or an 'affirmative link,' between the policy
> and the deprivation of his constitutional rights." Deferio, 770 Fed. App'x at
> 590 (2d Cir. 2019) (citing Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44
> (2d Cir. 1985)). "Boilerplate statements" that county employees were
> acting in accord with a municipal policy, with no facts to support those
> statements, are not sufficient to support a Monell claim. See Brown v.
> Oneida Cnty., No. 6:15-CV-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug.
> 12, 2016).

Mendez, 2024 WL 1251541, at *3.

As with the original complaint, plaintiff fails to properly identify an official policy,

practice, or custom that resulted in his denial of his access to medicine for almost 24

hours on October 25, 2022.  Plaintiff's only reference in his complaint to a "policy" of the

County was that "Saratoga County failed to properly train and supervise employees with

regard to the Policy Manual of the Saratoga Sheriff's Office, sections 100.5, 401.1.1 and

403.5.1, and the rights of the citizens under the U.S. Constitution and New York State

---

[5]   Unless otherwise noted, the Court has provided plaintiff with copies of any unpublished cases cited
herein.

Constitution."  Dkt. No. 8 at 20.  However, plaintiff appears to make this claim in connection with his allegations that Lewicki, Martin, Dupras, Brownell, and Carey, acted in concert to deprive the Plaintiff of his civil rights under the Fourth, Fifth, and Fourteenth Amendments of the United States," as this claim is made in that section of the complaint.  Dkt. No. 8 at 15.  Further, plaintiff did not provide the Court with copies of the Policy Manual he cites, and the Court has been unable to find those relevant sections on the internet.

However, even if the sections of the Saratoga Sheriff's Office policy manual plaintiff cites relate to the provision of medicine or medical care to those incarcerated in the Saratoga County Correctional Facility, plaintiff has not offered any facts to demonstrate an "affirmative link between the policy and the deprivation of his constitutional rights."  Mendez, 2024 WL 1251541, at *3.  "Boilerplate statements that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a Monell claim."  Id.  Plaintiff offers no factual support for his allegation that "Saratoga County and Zurlo failed to enforce a proper policy, train and supervise employees regarding the legal requirements and protections applicable to persons as set forth in the U.S. Constitution and other laws."  Dkt. No. 8 at 28.  This conclusory and fact-devoid statement that Zurlo or Saratoga County deprived him of medication for almost 24 hours fails to demonstrate that this action was taken specifically in connection with, or pursuant to, an official policy or custom.  He has also failed to demonstrate an affirmative link between an official policy or custom and the deprivation of his constitutional rights.  See Mendez, 2024 WL 1251541, at *3.

Finally, plaintiff has failed to demonstrate a failure to supervise or train that rises to the level of deliberate indifference of his rights.  See Mendez, 2024 WL 1251541, at *3.  As noted, plaintiff conclusory states, in a section of his complaint that appears unconnected to the medical indifference claims, that "Saratoga County failed to properly train and supervise employees with regard to the Policy Manual of the Saratoga Sheriff's Office, sections 100.5, 401.1.1 and 403.5.1, and the rights of the citizens under the U.S. Constitution and New York State Constitution."  Dkt. No. 8 at 20.

> To show that a municipality, through its failure to train or supervise employees, has violated § 1983, three requirements must be met. Walker v. City of New York, 974 F.2d at 297. First, the municipality's policy maker must know "'to a moral certainty' that [his or] her employees will confront a given situation." Id. (quoting Canton v. Harris, 489 U.S. 378, 390 n.10, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Second, either the situation must present the employee with the sort of difficult decision that training or supervision would ameliorate or there is "a history of employees mishandling the situation." Id. Finally, it must be shown that the "wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 298.  Furthermore, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993) (overruled on other grounds).

Aretakis v. Durivage, No. CIV.1:07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009).

Even if plaintiff had properly identified a specific formal policy, custom, or practice or sufficiently demonstrated a failure to train or supervise, plaintiff's claims as plead also fail to state a claim upon which relief can be granted.  Plaintiff contends his medications were denied "for almost 24 hours when the Plaintiff was taken to the Saratoga Hospital because his blood pressure was dangerously elevated," even though his attorneys

provided the county correctional facility with a copy of his medications list.  See Dkt. No. 8 at 27.  Plaintiff alleges that this "withholding of his medications, including an antiarrhythmic and anticoagulant, caused the Plaintiff to fall back into withdrawal and an abnormal heart rhythm and put him at increased risk of stroke."  Id. at 28.  Plaintiff contends that he has "suffered permanent physical and emotional harm as a result."  Id.

To state a medical indifference claim under the Fourteenth Amendment as a detainee, plaintiff must allege (1) "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and (2) "a subjective prong showing that the defendants acted with at least deliberate indifference to the challenged conditions."  Mendez, 2024 WL 1251541, at *3 (quoting Sims v. City of New York, 788 F. App'x 62, 63 (2d Cir. 2019) (summary order)).  "'[W]here the allegations amount to a delay in medical treatment (rather than a complete deprivation of treatment), courts look at the particular risk of harm faced by an inmate due to the delay in treatment, rather than the severity of the inmate's underlying medical condition.'"  Id. at *3 (quoting Robinson v. Broome Cnty. Sheriff, No. 22-CV-0023 (GLS/CFH), 2022 WL 2914476, at *2 (N.D.N.Y. July 25, 2022) (additional citation omitted)).  As noted, plaintiff contends that he was denied his medications for almost 24 hours.  See Dkt. No. 8 at 27-28.  However, he states that he was taken to the hospital; thus, it cannot be said that he was denied all medical attention.  See id. at 28.  Thus, it appears appropriate to view his claim through the lens of a delay or interruption in medical attention, rather than a full deprivation of medical care.  Arguably, with respect to the first prong, if it is the case that plaintiff has suffered permanent physical and emotional injury in connection with the almost 24-hour delay in his medication, he may

meet the requirements of the first prong.  "With respect to the second prong, an official does not act with deliberate indifference 'unless the official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" Mendez, 2024 WL 1251541, at *3 (quoting Bruno, 727 F. App'x at 720) (additional internal citation omitted).

Plaintiff makes no specific statement to set forth Zurlo's state of mind in denying plaintiff access to his medication for almost 24 hours.[6]  He does not allege that Zurlo's alleged action was intentional or reckless, or that he knew or should have known the condition posed an excessive risk to his health or safety.  Although plaintiff notes that his attorney provided Saratoga County with a list of his medications, plaintiff does not allege that they were aware of the risks associated with a less than 24-hour delay in access to his medications or that he was intentionally denied his medications, rather than denied them for a non-deliberate reason, such as, perhaps, waiting to obtain confirmation of the medications, waiting to obtain a prescription, or awaiting some kind of approval or access to the medication.

In sum, plaintiff's municipal liability and deliberate indifference claim must fail for the reasons set forth above.  However, out of an abundance of solicitude, the undersigned recommends providing plaintiff with a final opportunity to amend his

---

[6]  Plaintiff states that "defendants deliberately withheld the Plaintiff's medication"; however, plaintiff makes this statement specifically in connection with the 2017 incarceration and against Lewicki and Martin, when he claims those defendants and his medication in their possession; however, the undersigned recommended a finding that this claim is time barred, and, thus, concludes it is not not relevant to plaintiff's October 2022 denial of medication during incarceration.  Dkt. No. 8 at 27.

complaint to attempt to set forth a valid municipal liability claim against Zurlo and Saratoga County connected with the October 25, 2022, denial of medication for almost 24-hours so that he may identify a specific official policy, custom, or practice of the county; set forth non-boilerplate statements that demonstrate that defendants acted pursuant to that official policy or custom; that the deprivation of his medicine for almost 24 hours on October 25, 2022, was sufficiently serious; and  demonstrate that defendants' conduct was intentional or reckless, or "identify a specific deficiency in training and supervision in such a way that such deficiency "'actually caused the constitutional deprivation."[7]  Aretakis v. Durivage, No. CIV.1:07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (quoting Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)).

## III.  **Motion for Counsel**[8]

Plaintiff has filed a motion to appoint counsel.  See Dkt. Nos. 4, 6.  Plaintiff states that he requires appointment of counsel because he is "disabled, making references and research inaccessible at times," is "71 years old and may not be as fast as I need to be to reply," and is "unfamiliar with Federal Civil Law."  Dkt. No. 4 at 1.  Plaintiff provides

---

[7]  Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference.  See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015).  Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice.  An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

[8]  As a motion for appointment is nondispositive, the undersigned's determination on this motion need not be written as a recommendation.  See, e.g., Moore v. Shineski, No. 06-CV-655A(F), 2010 WL 1257914, at *1 n.2 (W.D.N.Y. Mar. 25, 2010) (noting, in reviewing together a dispositive motion to dismiss and the plaintiff's motion to appoint counsel, that "the motion to appoint counsel seeks non-dispositive relief.").

letter from two law firms who declined to represent him and a list of "lawyers called" which appears to set forth a variety of lawyers he contacted or intended to contact regarding representation in this case.  See Dkt. No. 4 at 2-14.

It is well-settled that there is no right to appointment of counsel in civil matters. See Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994).  Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  Cooper v. A. Sargenti, Inc., 877 F.2d 170, 172-73 (2d Cir. 1989).

In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider several other factors in making its determination.  See id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)); Sawma v. Perales, 895 F.2d 91, 95 (2d Cir. 1990).  Among these factors are:

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61.  None of these factors are controlling, however, and each case should be decided on its own facts.  See id.

Here, this case has not yet made it past the initial review stage, and it is unclear whether plaintiff will set forth a valid claim upon which this Court permits him to proceed and issue service upon defendant(s).  Thus, he has not yet demonstrated that his claim or claims are likely to be of substance.  See Hodge, 802 F.2d at 61.  However, even assuming, arguendo, that this case may be of substance, plaintiff has demonstrated an ability to represent his claims by: submitting a detailed original complaint, his motion to appoint counsel, timely filing objections, and timely filing a detailed amended complaint that properly removed the claims and defendants that were dismissed by this Court with prejudice.

Moreover, the Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Insofar as plaintiff seeks appointment of counsel to assist him in accessing research or responding quickly, or because refers to himself as elderly, this is an insufficient reason to appoint counsel, especially at this early stage.  Although appointment of counsel may make researching and presenting arguments in this action easier, and that plaintiff is not familiar with federal law, that is true for every pro se plaintiff who proceeds before this court.  Accordingly, plaintiff has failed to demonstrate that appointment of counsel at this time is warranted.  Therefore, appointment of counsel is denied without prejudice to renew should plaintiff demonstrate a specific change in his circumstances.

## IV.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Appointment of Counsel is **DENIED without prejudice** (dkt. nos. 4, 6); and it is

**RECOMMENDED**, that plaintiff's Fourteenth Amendment deliberate medical indifference/municipal liability claim against Sheriff Zurlo and Saratoga County be **DISMISSED without prejudice** and with opportunity to amend as specified herein; and it is further

**RECOMMENDED**, that all other claims and defendants be **DISMISSED with prejudice** due to statute of limitations and/or failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file a second amended complaint limited to repleading only those claims/defendants against which this Court permits leave to amend, and if plaintiff does not timely file a second amended complaint, it will be deemed as an abandonment of his claim for which leave to replead has been granted and will result in judgment being entered against plaintiff on this claim without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892

F.2d 15 (2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[9]

       **IT IS SO ORDERED**.

Dated: May 2, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  <u>Id.</u> § 6(a)(1)(c).